**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| JAVID CHAUDHRI and | ) | |
| | ) | |
| ARSHAD CHAUDHRI, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-cv-00703-DGK |
| | ) | |
| STATE AUTO PROPERTY AND | ) | |
| CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT</u>

This case involves claims of breach of contract and vexatious refusal to pay resulting from Defendant State Auto Property and Casualty Insurance Company's ("State Auto") denial of Plaintiffs Javid Chaudhri and Arshad Chaudhri's insurance claim.

Now before the Court is Defendant State Auto's Motion for Summary Judgment (Doc. 30). Because Plaintiffs violated the insurance policy's cooperation clause, Defendant's motion is GRANTED.

### Undisputed Material Facts

Plaintiffs Javid and Chaudhri and Arshad Chaudhri own a convenience store located at 700 East 85th Street, Kansas City, Missouri 64131. Hani Daifallah and Mohammed Daifallah ("Daifallahs") were tenants of Plaintiffs' store.

Defendant State Auto issued a businessowners insurance policy to Plaintiffs for the convenience store that was effective from January 1, 2012, through January 1, 2013. This policy

provided coverage "for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."  "Covered property" is defined as "the type of property described in [Section] A.1., and limited in A.2. Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property."  The property described in Section A.1. includes:

> Buildings, meaning the buildings and structures at the premises described in the Declarations, including:
>
> (1)  Completed additions;
>
> (2)  Fixtures, including outdoor fixtures;
>
> (3)  Permanently installed:
>
> > (a)  Machinery; and
> >
> > (b)  Equipment;
>
> (4)  Your personal property in apartments or rooms furnished by you as landlord;
>
> (5)  Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:
>
> > (a)  Fire extinguishing equipment;
> >
> > (b)  Outdoor furniture;
> >
> > (c)  Floor coverings; and
> >
> > (d)  Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering.

Pursuant to the Declarations page, theft is a covered cause of loss.   The Dishonesty Exclusion, however, precludes coverage for "loss or damage caused by or resulting from . . . "[d]ishonest or criminal acts by . . . anyone to whom you entrust the property for any purpose."

The policy also includes the following relevant Property Loss Conditions:

> (a)  You must see that the following are done in the event of loss or damage to Covered Property:
>
> > .     .     .

> (5)    At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.
>
> (6)    As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also . . . permit us to make copies from your books and records.
>
> (7)    Send us a signed, sworn proof of loss containing the information we request to investigate the claim . . .
>
> (8)    Cooperate with us in the investigation or settlement of the claim.
>
> .   .   .
>
> (b)    We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insureds' books and records. . . .

On July 23-24, 2012, the Daifallahs removed fixtures, appurtenances, and personal property from the convenience store. The damage and stolen property were reported to the police on July 24, 2018. The Daifallahs told police they owned the items that they removed from the store. Plaintiffs submitted a claim to Defendant that same date.

On August 8, 2012, Defendant received a copy of the police report.

On September 24, 2012, Defendant sent Plaintiffs a reservation of rights letter, advising them "coverage concerns focus on allegations from the tenant . . . that they are the owners of the fixtures, betterments and improvements . . . and are entitled under the terms of their lease to remove them upon vacating the premises." Defendant, therefore, requested Plaintiffs complete and return the proof of loss forms and "all documentation and information that supports [their] claim." Defendant also requested Plaintiffs submit to examinations under oath.

3

On September 26, 2012, Plaintiffs submitted a proof of loss; Defendant acknowledged receipt and reiterated its request for supporting documentation and information.

On October 16, 2012, Plaintiffs' representative contacted Defendant stating that the requested information and documents were previously provided by Plaintiffs' attorney to the adjuster, including "a copy of [their] purchase contract demonstrating [they] purchased a fully functioning and operating site with the items . . . existing as opposed to having individual receipts for [sic] individual items."

On November 6, 2012, Defendant advised Plaintiffs that it was finalizing the investigation based on Plaintiffs' representation that Defendant had been presented with all documentation Plaintiffs could provide.

On November 14, 2012, Defendant again requested Plaintiffs appear for an examination under oath. Defendant reiterated this request on November 20, 2012, and suggested it take place on December 20, 2012. Defendant further requested Plaintiffs produce specific documents in advance of the December 20, 2012, examination under oath. At Plaintiffs' request, the December 20, 2012, examination was postponed.

On January 11, 2013, Defendant followed up with Plaintiffs regarding the requested documents and examinations under oath.

On January 31, 2013, Defendant advised Plaintiffs that it was attempting to reschedule the examinations under oath prior to making a final claim decision.

On February 20, 2013, Defendant followed up with Plaintiffs regarding the requested documents and examinations under oath.

On March 15, 2013, Defendant advised Plaintiffs that it was waiting to hear back from them to reschedule the examinations under oath prior to making a final claim decision.

In a letter dated April 25, 2013, Defendant declined coverage for the claim due to Plaintiffs' failure to cooperate and their breach of the terms and conditions of the Policy by failing to submit to an examination under oath and produce requested documents and information. This denial was reaffirmed by a letter dated September 4, 2013.

On June 1, 2017, Plaintiffs' counsel contacted Defendant regarding the claim. On June 5, 2017, Plaintiffs' counsel requested Defendant reconsider its denial and stated her clients would produce the requested documentation; some of the requested documentation was provided on June 26, 2017. On July 11, 2017, before Defendant responded, Plaintiffs filed the instant lawsuit.

## Standard

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A party who moves for summary judgment bears the burden of showing there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A court must view the facts in light most favorable to the nonmoving party and allow the nonmoving party to benefit from all reasonable inferences to be drawn from the evidence. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588-89 (1986).

## Discussion

Plaintiffs assert claims of breach of contract and vexatious refusal to pay against Defendant

for denying their claim for the loss and damages to their convenience store. Defendant now seeks summary judgment on both claims, maintaining Plaintiffs failed to comply with the policy's cooperation condition.[1]

Insurance policy cooperation clauses "are valid and enforceable under Missouri law." *Med. Protective Co. v. Bubenik*, 594 F.3d 1047, 1051 (8th Cir. 2010) (quoting *Union Ins. Co. of Providence v. Williams*, 261 F. Supp. 2d 1150, 1152 (E.D. Mo. 2003)). "Cooperation clauses are designed to 'enable the [insurance] company to possess itself of all knowledge, and all information as to other sources of knowledge, in regard to facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims.'" *Wiles v. Capitol Indem. Corp.*, 215 F. Supp. 2d 1029, 1032 (E.D. Mo. 2001) (citations omitted). "To deny liability coverage under such a provision, an insurer must prove: (1) a material breach of the cooperation clause; (2) the existence of substantial prejudice as a result of the breach; and (3) the exercise of reasonable diligence to secure the insured's cooperation." *Med. Protective Co.*, 594 F.3d at 1051 (citing *Wiles*, 215 F. Supp. 2d at 1031).

In this case, the undisputed facts show that Plaintiffs materially breached the cooperation clause by not providing the requested documentation and submitting to an examination under oath. This failure to comply denied Defendant the opportunity to complete its investigation, particularly

---

[1] Defendant also seeks summary judgment on grounds that coverage would be precluded by the policy's dishonesty exclusion. Resolution of this issue is not necessary for purposes of summary judgment. Defendant would still be entitled to judgment as a matter of law based on Plaintiffs' violation of the cooperation condition regardless of (1) whether the personal property at issue was covered under the policy and (2) the applicability of the policy's dishonesty exclusion. The purpose of cooperation clauses is for insurance companies to be able to determine these very types of issues, see *Wiles v. Capitol Indem. Corp.*, 215 F. Supp. 2d 1029, 1032 (E.D. Mo. 2001); an opportunity which Defendant was not afforded in this case.

regarding coverage concerns based on who owned the property. This was prejudicial as a matter of law. *Wiles*, 215 F. Supp. 2d at 1032; *Roller v. Am. Modern Home Ins. Co.*, 484 S.W.3d 110, 118 (Mo. Ct. App. 2015). Lastly, Defendant exercised reasonable diligence to secure Plaintiffs' cooperation. *See Union Ins.*, 261 F. Supp. 3d at 1152 (finding seven requests for insured to participate in an examination under oath constituted reasonable diligence); *Wiles*, 215 F. Supp. 2d at 1031-32 (granting summary judgment in favor of insurer and finding the insurer "exercised reasonable diligence in attempting to secure Plaintiff's cooperation, by requesting the examination under oath on two separate occasions prior to Plaintiff's filing suit"). Defendant requested supporting documentation and/or that Plaintiffs submit to an examination under oath eight times before it ultimately denied coverage. In December of 2012, Defendant postponed a scheduled examination based on Plaintiffs' request; despite numerous subsequent requests, Plaintiffs never provided their availability. Summary judgment is, therefore, granted on Plaintiffs' breach of contract claim.

"Where a claim for breach of contract fails, 'Missouri precedent compels' that a vexatious refusal to pay claim must also fail." *Montgomery v. Allstate Prop. and Cas. Ins. Co.*, No. 17-00952-CV-W-GAF, 2019 WL 718823, at *4 (W.D. Mo. Feb. 15, 2019) (quoting *BSI Constructors, Inc. v. Hartford Fire Ins. Co.*, 705 F.3d 330, 335 (8th Cir. 2013)). As a result, summary judgment is also granted on Plaintiffs' vexatious refusal claim.

## Conclusion

For the foregoing reasons, Defendant State Auto's Motion for Summary Judgment (Doc. 30) is GRANTED.

**IT IS SO ORDERED.**


Date:     April 8, 2019                      /s/ Greg Kays
                                                GREG KAYS, JUDGE
                                                UNITED STATES DISTRICT COURT